Mr. Justice James
delivered the opinion of the Court:
The papers in this cause having been mislaid or lost, it is heard here upon a stipulation of the attorneys of the parties that the state of the record was as follows:
“The action was upon an alleged promissory note of the ’defendant, dated Washington, D. C., September 26, 1876, promising to pay to Ann Joyce, or order, twelve months after date, $512.85, for value received, with interest until paid, at the rate of 6 per cent, per annum, payable at the National Metropolitan Bank, and endorsed by the said Ann Joyce to the plaintiff. The declaration contained a special count, in the usual form, upon the said promissory note, together with the common counts, and was accompanied by an attachment in the usual form, of certain property interests of the defendant, based upon his non-residence in the District of Columbia. The pleas were, that the defendant was not indebted as alleged; that he never was indebted as alleged; *192 that he did not promise as alleged; that the cause of action did not accrue within three years; and that the said promissory note was not indorsed by the payee,' on which pleas there was the usual joinder of issue.
At the trial below, the plaintiff testified that the note was executed and indorsed as alleged, that the consideration for the note was money loaned by him to the defendant, the payee being merely an accommodation indorser; that the plaintiff continued the holder of said note from the time he received it until the time of trial; that it was duly presented and dishonored; that the defendant acknowledged his liability and promised payment within three years before action brought; that, the said note not being paid, the plaintiff placed it for collection in the hands of John F. Riley, Esq., then a member of the bar of this Court; that the said Riley subsequently left the jurisdiction without having collected the note or returned it to the plaintiff, that the plaintiff made diligent efforts to obtain the said note, both by correspondence with the said Riley, and by having search made among his legal papers which remained in the city, but that the said note could not be found and was hopelessly lost and remained wholly unpaid. Thereupon, upon the motion of the defendant’s counsel, the justice presiding at the trial struck out all the testimony of the plaintiff concerning the said note, against the objection of the plaintiff, who then and there excepted to said action of the court.
Thereupon the plaintiff further offered to prove by testimony of William G. Moore, Esq., notary public, that the said notary presented the said promissory note at its maturity, at the bank at which it was made payable, and demanded payment thereof, but was answered by the discount clerk “no funds ; ” that he thereupon protested the said note, and made a true copy thereof, which he produced at the trial ; but the justice presiding, upon the objection of the counsel for the defendant, refused to receive any portion of the testimony of the said William G. Moore, to which ruling of the court the plaintiff then and there excepted.
*193 Thereupon, the plaintiff offering no further testimony, the attorney for the defendant moved the court to direct a verdict for the defendant, which motion the j ustice presiding, against the objection of the-plaintiff, granted, and the plaintiff then and there excepted thereto.
'A bill of exceptions, presenting the foregoing facts, the rulings of the presiding justice and the exceptions thereto of the plaintiff, was thereupon duly settled and signed and sealed by said justice.”
The question to be considered is, whether an action at law may be maintained against the maker on a lost negotiable promissory note, and, ' if it may be, whether such an action may be maintained under the circumstances of this case.
The plaintiff refers to the case of Boteler vs. Dexter, decided by this court at a recent term (reported ante p. 26) as an authority showing that an action at law on a lost promissory note was sustained even against one who was held to have placed his name on the note in the character of indorser. It appears in the report of that case that a prior suit had been brought against the same defendant, that the case came on for trial, that the note was presented and proven at the trial, that then, for some reason, the case was dismissed “ without prejudice,” and that thereafter the suit in question was brought on June 15, 1887. It further appeared that on or about February 26, 1888, after the suit had been pending for some time, the plaintiff lost the note and never had been able since to find it, although he had searched for it diligently. As to the objection that no recovery could be had at law upon a lost note, the court said: “If the first of these questions (namely, the questions just stated), were an open one, it would be worthy of the utmost consideration, and many potent reasons might be arrayed in support of, as well as against it, and there are many eminent authorities on either side. But we regard it as settled in this jurisdiction by the decision of the Supreme Court of the United States, in the case of Renner vs. Bank of Columbia, 9 Wheat., 581, where the question was treated as one of evidence, and it was held that where the original note, having *194 been in court but a short time before, and introduced in evidence in another trial, was thereafter lost by accident, and upon thorough search could not be found, there being nothing to indicate a suspicion that it was purposely withheld, and no doubt existing as to its real contents, parol evidence as to such contents might be given and a recovery had upon it.
That case was in all material respects like the one under consideration, and must, we think, govern it.”
It appears that in the case referred to as binding on this Court, the action was against an indorser. Mr. Justice Thompson, speaking for the majority of the Court, there said: “The only remaining question arises out of a bill of exceptions, taken upon the trial, to the decision of the Court below, admitting secondary evidence of the contents of the note. And it has been contended that no such evidence was admissible, unless it appeared that the note was destroyed. The rule with respect to the admission of secondary evidence,- we think, is not so. restricted. If the original is lost by accident, and no fault is imputable to the party, it is sufficient. In the present case, it appeared that the note was in Court a few days before, and introduced in evidence in the trial against Foyles, the maker, but had been mislaid, and upon thorough search could not be found. Every case of this kind must depend, in a great measure, upon its own circumstances. This rule of evidence must be so applied as to promote the ends of justice, and guard against fraud or imposition. If the circumstances will justify a well grounded belief that the original paper is kept back by design, no secondary evidence ought be be admitted; but when no such suspicion attaches, and the paper is of that description that no doubt can arise as to the proof of its contents, there can be no danger in admitting the secondai-y evidence. In this case, the note having been in Court a few days before, and proved, upon a trial against the maker, there could be no possible inducement to withhold it, and it was, no doubt, mislaid by accident.”
It is to be observed that in Renner vs. The Bank, and the case decided by this Court, the notes were lost after the suits *195 on them were brought; in other words, that there was no doubt of the jurisdiction and complete competency of a court of law to entertain an action on either note at the time when the suit was brought. It was assumed by the Supreme Court, though the point was not mentioned, that pirisdiction is not lost by a loss of the proofs on which it would found its judgment. It was for that reason, we must suppose, that the Court treated the question as one simply of evidence, and held, notwithstanding the peculiarities of negotiable paper, that the ordinary principles relating to secondary evidence applied.
It was suggested at the argument that, although we might be bound by the decision in Renner vs. The. Bank, in a strictly analogous case, we should limit its application on the ground that it was opposed to the prevailing doctrine as to lost negotiable instruments. We are not compelled to consider that question in this case. It is enough to say that Renner vs. The Bknk of Columbia is not an 'authority which pretends to govern the case where an action at law is brought on a negotiable instrument already lost at the time of bringing the action. In that case the question is not whether the evidence of contents is admissible in support of an action at law properly brought, but whether a right to bring such an action existed at the time when it was brought. On this question we have an unembarrassed opinion. The prevailing doctrine, to which nothing in Renner vs. The Bank or in our own former decision is opposed, is that a court of law is not competent to entertain an action upon a lost negotiable instrument, inasmuch as such a court must, in doing so, alter one of its terms annexed by usage. It does so by compelling payment without surrender of possession, and cannot supply the place of possession by providing indemnity.
Mercantile custom, in other words, the law of such transactions, constitutes a part of the contract just as much as does the obligation to pay it all; and according to that custom it is a right of an obligor on a negotiable instrument to have, on paying it, the protection afforded by possession, or, in case possession cannot be given him, by an indemnity. *196 If the instrument cannot be surrendered by reason of its loss, it is nothing to the purpose that the loss happened after maturity, and that the promissor can therefore successfully defend himself against a new holder by proving payment. That is precisely what the promissee has no legal right, according to mercantile custom — the law of the contract — to call upon him to do at his own expense. It is immaterial whether the loss occurred by the negligence of the promissee; as between him and the promissor the burden is on him, and when he is unable to surrender possession, and thus to comply with his customary obligation, he is not in a position to enforce payment, unless he secures the promisor against risks which do not belong to him. The promissee simply has no right to enforce payment in departure from the custom of such transactions. It follows that a court which cannot place the promissor on the same footing of safety which a surrender of the instrument would give him — that ¿s to say, by providing an indemnity — is incompetent to enforce payment, because it must thereby enforce the contract in 'departure from its terms.
This conclusion renders it unnecessary to consider the other exceptions.

Judgment is affirmed.